UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 16-cr-370 (CM) |
| MATTHEW CONNOLLY AND GAVIN BLACK, | ) ) ) ) | |
| *Defendants.* | ) ) | |

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR A *CURCIO* HEARING

The Court should grant the government's motion for a *Curcio* hearing because the largely undisputed facts give rise to actual and potential conflicts that are ripe for the Court's consideration. Indeed, of the seven key facts summarized at the very beginning of the government's opening brief, only one – Morgan Stanley's status as a victim – appears to be in dispute. But even that is a dispute in name only. The government produced three trade confirmations from swaps between Morgan Stanley and Deutsche Bank that had reset dates at issue in this matter, as well as an FD-302 summarizing an interview of the former head of Morgan Stanley's swaps desk confirming that manipulation on those reset dates would have caused Morgan Stanley either to pay more money to Deutsche Bank, or to receive less money from Deutsche Bank, than it otherwise would have. Contrary to the defendant's assertion, no further information in the form of counterparty identifications or the terms of trades is necessary to conclude that Morgan Stanley is a victim. As the government explained at length in its opening brief, if Morgan Stanley is both a victim and a current client of Paul Hastings, Mr. Breen and his defense team have an actual conflict.

Except in a cursory manner, the defendant's response does not dispute that proposition as a legal matter, *see* Def.'s Resp. at 1, ECF No. 94 (asserting, without further analysis, that "no actual conflict exists"), and instead erroneously assumes that any conflict is at most a potential conflict.  But a potential conflict "exists if the interests of the defendant may place the attorney under inconsistent duties at some time *in the future*." *United States v. Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998) (emphasis added).  Morgan Stanley is a victim *now*, not in the future, so if the government's legal analysis of the New York Rules of Professional Conduct, *see* Gov't's Mem. at 9-11, ECF No. 93, is correct then Morgan Stanley's victim status can only create an actual conflict.

The potential conflicts arise from M.B. being a prospective witness.  The government provided an extensive list of ways in which the potential conflicts could mature into actual conflicts if M.B. testifies.  Gov't's Mem. at 13.  Yet none of those examples are addressed in the defendant's response.  The only answer Mr. Breen and Paul Hastings provide is that M.B. had separate counsel at his 2013 interview, and Mr. Breen simply attended to represent Morgan Stanley.  Def.'s Resp. at 3.  That is a distinction without a difference.  Mr. Breen's attendance at the interview is largely immaterial for present purposes; it merely provides definitive evidence that Mr. Breen's representation of Morgan Stanley has a substantial relationship to his representation of Mr. Connolly.  Thus, even if Mr. Breen had not attended the interview, but otherwise represented Morgan Stanley with respect to the government's LIBOR investigations,[1] the potential conflicts would persist.

---

[1] The defense suggests at the outset that the government's position that the LIBOR investigations were separate should somehow prevent it from claiming that M.B.'s 2013 interview, conducted as part of the Barclay's LIBOR investigation, bears any relation to the present case against Deutsche Bank's ex-traders.  That argument rests on the fallacious assumption that the same

2

Finally, the question of whether the conflicts are waivable is not clear cut, as the defendant's response asserts.  For one thing, Mr. Breen and his team overlook the Court's independent interest in protecting the institution.  *See* Gov't's Mem. at 7-8, 14-15.  Even if Mr. Connolly provides a knowing and intelligent waiver, the Court should consider the full factual record developed at a *Curcio* hearing and whether Mr. Connolly's waiver – in conjunction with Morgan Stanley's consent – is adequate.  Beyond the Court's legitimate interest in having attorneys comply with rules of professional conduct, *Wheat v. United States*, 486 U.S. 153, 162 (1988), one can make "certain assumptions" about the Paul Hastings partnership agreement, such as Mr. Breen's compensation "depend[ing] on the profitability of the entire business enterprise," *United States v. Binday*, No. 12-cr-152 (CM), 2013 WL 1104258, at *5 (S.D.N.Y. Mar. 14, 2013).  Just as in *Binday*, Morgan Stanley is likely a client with more financial upside to Paul Hastings than Mr. Connolly, which raises "the possibility that [Mr. Breen] might (albeit subconsciously) be influenced by these personal interests during the course of these proceedings, to [Mr. Connolly's] detriment."  *Id.*  Even if that possibility turns out to "be simply a matter of appearances, this court must be concerned with appearances," and fully vet these issues in a *Curcio* hearing. *Id.*

Furthermore, regardless of the choice of adjectives, Def's' Resp. at 4 (disagreeing with the government's characterization of the consent letter as "heavily conditioned"), the Morgan Stanley consent has significant conditions that need to be considered in determining whether the conflicts are waivable.  For example, Mr. Breen and his defense team are unable not only to cross-examine M.B., but also to do anything that might prejudice Morgan Stanley "in any other

---

person cannot be a witness – or a victim – to two separate, but similar, crimes.  In short, the argument is a red herring and should be rejected by the Court.

litigation, arbitration or other adversarial proceeding or claim that might arise between Morgan Stanley and Connolly in connection with the charges the government has filed against him, or otherwise."[2] And under either condition, they "cannot do anything to try to discredit [M.B.'s] testimony, . . . including argue on summation that the . . . testimony . . . should not be believed," thus leaving defense counsel with "one hand tied behind its back" when it comes to the testimony of M.B. *Binday*, No. 12-cr-152 (CM), 2013 WL 1104258, at *5. The ability of the Paul Hastings team to "give [Mr. Connolly] effective representation in [such] circumstances," *id.*, is central to the Court's *Curcio* inquiry into whether a "rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994).

For the reasons stated above and in the government's opening brief, the Court should grant the motion for a *Curcio* hearing.


SANDRA MOSER
Acting Chief, Fraud Section
Criminal Division
United States Department of Justice

JEFFREY D. MARTINO
Chief, New York Office
Antitrust Division
United States Department of Justice


_____/s/_____
CAROL L. SIPPERLY
Assistant Chief
ALISON L. ANDERSON
RICHARD A. POWERS
Trial Attorneys
Criminal Division, Fraud Section
United States Department of Justice

_____/s/_____
MICHAEL T. KOENIG
Trial Attorney
Antitrust Division
United States Department of Justice
(202) 616-2165

---

[2] The consent letter does not literally say that Paul Hastings may not do anything that might prejudice Morgan Stanley in another proceeding, but such a condition is certainly implied. In addition, Paul Hastings prejudicing Morgan Stanley in that way puts the firm at serious risk of running afoul of Rule 1.7(a) and possibly Rule 1.8(b).

4