UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :    No. 1:16-CR-00370 (CM) |
| | : |
| MATTHEW CONNOLLY and | : |
| GAVIN CAMPBELL BLACK, | : |
| | : |
| *Defendants.* | : |
| | : |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION FOR A *KASTIGAR* HEARING**

Cases

*Kastigar v. United States*, 864 F.3d 63 (2d Cir. 2017) ............................................................... 8, 9
*United States v. Allen*, 864 F.3d 63 (2d Cir. 2017) ..................................................................... 4, 10
*United States v. Bagdis*, 488 F. App'x 593, 597 (3d Cir. 2012) ..................................................... 15
*United States v. Bartel*, 19 F.3d 1105, 1112-13 (6th Cir. 1994) ....................................................... 9
*United States v. Caporale*, 806 F.2d 1487, 1518 (11th Cir. 1986) ................................................... 9
*United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995) ....................................................... 11
*United States v. Dynalectric Co.*, 859 F.2d 1559, 1578 (11th Cir. 1988) ........................................ 9
*United States v. Gallo*, 863 F.2d 185, 190 (2d Cir. 1988) ............................................................. 13
*United States v. Helmsley*, 941 F.2d 71, 80 (2d Cir. 1991) ........................................................ 9, 10
*United States v. Kilroy*, 27 F.3d 679, 683 (D.C. Cir. 1994) ............................................................. 8
*United States v. Lipkis*, 770 F.2d 1447, 1451 (9th Cir. 1985) ............................................. 9, 12, 13
*United States v. Montoya*, 45 F.3d 1286, 1298 (9th Cir. 1995) ..................................................... 11
*United States v. Nanni*, 59 F.3d 1425, 1432 (2d Cir. 1995) .......................................................... 12
*United States v. Provenzano*, 620 F.2d 985, 1006 (3d Cir. 1980) ........................................ 9, 12, 13
*United States v. Slough*, 641 F.3d 544, 548-49 (D.C. Cir. 2011) .................................................. 10
*Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478 (1972) ...................... 10

The United States of America, by and through its undersigned attorneys, respectfully submits the following memorandum in support of its opposition to Defendants' motion for a *Kastigar* hearing. As set forth below, a *Kastigar* hearing is not warranted in this case, and the Court should decline to hold a hearing for the following reasons: (1) unlike in *United States v. Allen*, 864 F.3d 63 (2d Cir. 2017), no member of the Department of Justice ("DOJ") prosecution team and no prospective government witness has been exposed to Gavin Black's compelled testimony to the Financial Conduct Authority ("FCA"); (2) the government had *already* obtained ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ from other independent sources, including Black's own prior proffer statements to the government; (3) Black ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆; and, (4) Black's hypothetical and attenuated claims that his testimony to the FCA tainted this criminal case are facially insufficient to merit an evidentiary hearing.

I. **Relevant Facts**

    A. **The government developed the substantial evidence of Defendants' guilt from sources of information that were independent of Black's FCA testimony.**

On May 31, 2016, a grand jury returned a 10-count indictment against Defendants Gavin Black and Matthew Connolly, charging them with conspiracy to commit bank fraud and wire fraud and multiple counts of wire fraud. The charges stem from Defendants' knowing participation in the scheme to manipulate the London Interbank Offered Rate ("LIBOR"), which scheme has been the subject of a years-long investigation by the DOJ. On August 18, 2016, the grand jury returned a superseding indictment against both Defendants, which added another substantive wire fraud charge.

3

Over the course of its investigation, the DOJ obtained more than 1.4 million documents from Deutsche Bank. Of those 1.4 million documents, over 1 million were produced to the DOJ by Deutsche Bank *before* Defendant Gavin Black was ever interviewed by the U.K. Financial Conduct Authority ("FCA") in October 2013. Among those more than 1 million documents were numerous chats, emails, and audio files that plainly demonstrate Defendants' knowing participation in the scheme to manipulate LIBOR. Moreover, in addition to the substantial documentary evidence, the DOJ also interviewed approximately 30 individuals in connection with LIBOR manipulation at Deutsche Bank. The identities of all of those individuals, including the Defendants, were already known to the DOJ based on the documents it had received *prior to* Black's FCA testimony. In addition, three of those individuals, James King, Timothy Parietti, and Michael Curtler, decided to plead guilty and have agreed to cooperate and testify in this case. King, Parietti, and Curtler each made his own independent decision to cooperate with the DOJ, without reading, reviewing, or being exposed in any way to Black's FCA testimony.

The principle witness before the grand jury was FBI Special Agent Jeffrey Weeks. Special Agent Weeks also was not exposed to Black's FCA testimony. Special Agent Weeks's grand jury testimony was based entirely on the substantial documentary evidence amassed by the DOJ and his interviews of witnesses, such as other traders at Deutsche Bank who had knowledge of, or participated in, the conspiracy to manipulate LIBOR. None of these witnesses were ever exposed to Black's compelled testimony or its substance.

**B. Gavin Black's** ███████████████████████.

On October 1, 2013, Black, along with his legal counsel, appeared for a voluntary interview, pursuant to a proffer agreement, with the Department of Justice in Washington, D.C. The interview was conducted by two DOJ trial attorneys. One attorney from the Commodity

4

Futures Trading Commission ("CFTC") and two FBI agents also attended the interview. No members of any other regulatory or enforcement agency, domestic or foreign, attended the interview. During that interview, Black repeatedly denied making requests for LIBOR submissions for the purpose of benefiting his own trading positions, even when he was repeatedly confronted with Bloomberg chat messages which plainly show him making such direct requests. Exhibit A, FBI Interview of Gavin Black, Oct. 1, 2013. Black's voluntary interview to DOJ consisted largely of self-serving, exculpatory statements and denials of culpability with respect to the manipulation of LIBOR submissions at Deutsche Bank. Given the fact that Black provided no incriminating information nor information that might plausibly provide an investigative lead, the government did not rely on Black's exculpatory statements to bring this criminal case.

On October 3, 2013, two days after Black's statements to DOJ, Black gave testimony to the FCA in London. In conducting its investigations, the FCA, which is the U.K.'s principal financial markets regulator, has the authority to obtain testimony from subjects, either on a voluntary basis or by exercising its power under Section 171 of the U.K.'s Financial Services and Markets Act of 2000, which permits the FCA to "compel" a person to answer questions in an on-the-record interview. When the FCA obtains testimony through its Section 171 authority, it may not use that subject's testimony in any future proceedings against him for market abuse or in criminal proceedings, except if the subject provides false or misleading information. The FCA received Black's testimony pursuant to its Section 171 authority.

Black's interview was conducted by the FCA and attended by several FCA investigators. No one from any United States law enforcement or regulatory agency attended the interview, nor did they request that the FCA conduct the interview or direct the FCA to ask any specific

questions. ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████ Exhibit B, FCA Interview of Gavin Black, Oct. 3, 2013.

### C. No member of the DOJ prosecution team or prospective witness received Black's FCA testimony.

Early on in its investigation into LIBOR manipulation at Deutsche Bank, the DOJ requested that the FCA not share any witness's compelled testimony, including Black's, with any member of the DOJ prosecution team. *See* Government Brief on the Scope of the Prosecution Team (Dkt. No. 51), *passim* (outlining separateness of investigations). The FCA agreed to accommodate DOJ's request to maintain the "wall" that DOJ set up to protect the independence and integrity of its investigation. In addition to the special precautions requested by the DOJ, the FCA, in accord with its own regulations, also protects against disclosure of compelled testimony. Specifically, the FCA treats the transcripts of any testimony it compels as "confidential" information, and there is a legal penalty for unauthorized disclosure of that material or its substance. Exhibit C, Letter from FCA, Aug. 30, 2017. *See* Financial Services and Markets Act 2000, Section 348, available at www.legislation.gov.uk/ukpga/2000/8/section/348.

In this case, the FCA did not provide Black's FCA testimony to any witness in this case other than Black himself. Exhibit C. Nor did the FCA use any information provided by Black in any of the FCA's public filings, such as its Final Notice regarding Deutsche Bank. *Id.* The FCA, however, did provide Black's FCA testimony to the U.K.'s Serious Fraud Office ("SFO").

During the summer of 2015, the SFO proceeded to trial in London against several traders

from other London banks in connection with manipulation of LIBOR. Following that trial, the SFO was required to disclose Black's FCA testimony to the five individuals who had been charged in the U.K. dollar LIBOR scheme, none of whom is a witness in this case. Exhibit D, Letter from SFO, Aug. 24, 2017. Similarly, the SFO was required to disclose Black's FCA testimony to the six individuals charged in the SFO's Euro Interbank Offered Rate ("Euribor") prosecution, none of whom is a witness in this case. *Id.*

## II. A *Kastigar* hearing is not warranted.

In *Kastigar v. United States*, the Supreme Court held that the protection afforded by 18 U.S.C. § 6002 (governing immunity from criminal prosecution when a person is compelled to testify) must be coextensive with the Fifth Amendment, and that the government was thus restricted from both direct and derivative use of immunized testimony in a subsequent criminal prosecution. 406 U.S. 441, 453 (1972). The Second Circuit's recent decision in *United States v. Allen* extended the *Kastigar* doctrine to instances in which a defendant is compelled by a foreign sovereign (such as the U.K.'s FCA) to give testimony and a cooperating witness who was substantially exposed to that testimony testifies at trial. 864 F.3d 63 (2d Cir. 2017).

Often, when a defendant has been compelled to testify under a grant of immunity on matters relating to a U.S. prosecution, a *Kastigar* hearing will be held "to determine whether or not coerced testimony has been used against the witness in violation of his Fifth Amendment rights." *United States v. Kilroy*, 27 F.3d 679, 683 (D.C. Cir. 1994). At the hearing, the government is required to prove, by a preponderance of the evidence, that the evidence it proposes to use was derived from legitimate independent sources. *Id.* at 91-92. The government is not, however, "required to negate every abstract possibility of taint in order to carry its burden of showing a legitimate, independent source for contested evidence." *United States v. Dynalectric*

7

*Co.*, 859 F.2d 1559, 1578 (11th Cir. 1988).

But not every case involving compelled testimony will implicate *Kastigar*, and a *Kastigar* hearing is not automatic every time the government prosecutes someone who previously was compelled to testify: "[I]t is clear that an evidentiary hearing is not mandated for all *Kastigar* motions and that whether a hearing is necessary to properly resolve a *Kastigar* claim depends on the particular facts of the case." *Dynalectric Co.*, 859 F.2d at 1580. As the Second Circuit has recognized, *Kastigar* is implicated only "where the immunized testimony has some *evidentiary effect* in a prosecution against a witness." *United States v. Helmsley*, 941 F.2d 71, 80 (2d Cir. 1991) (emphasis added). If immunized testimony does not furnish an investigatory lead or provide information that allows the government to build a case against a defendant, it cannot be said to have had any "evidentiary effect." *United States v. Caporale*, 806 F.2d 1487, 1518 (11th Cir. 1986); *United States v. Bartel*, 19 F.3d 1105, 1112-13 (6th Cir. 1994). Under those circumstances, where the lack of an "evidentiary effect" can be established without a *Kastigar* hearing (such as through documentary evidence), a hearing is unnecessary and the trial court is free to decline to hold one. *See, e.g., Dynalectric Co.*, 859 F.2d at 1580 (affirming district court's finding that there was no *Kastigar* violation where defendant's self-serving testimony was of no value to investigation); *United States v. Provenzano*, 620 F.2d 985, 1006 (3d Cir. 1980); *United States v. Lipkis*, 770 F.2d 1447, 1451 (9th Cir. 1985).

### A. Not a single witness nor any member of the prosecution team has been exposed to Defendant Black's compelled testimony.

The Defendants ask this Court for an evidentiary hearing "to determine whether the Government improperly used compelled testimony given by Mr. Black before the FCA." Motion at 16. But consistent with the fundamental principle "that the [Fifth Amendment] privilege protects against real dangers, not remote and speculative possibilities," *Zicarelli v. New*

8

*Jersey State Comm'n of Investigation*, 406 U.S. 472, 478 (1972), a defendant is not entitled to a full-blown *Kastigar* hearing simply because he raises the specter of some hypothetical evidentiary effect stemming from his compelled testimony. *See Helmsley*, 941 F.2d at 82 (affirming district court's denial of a full *Kastigar* hearing in part because there was no "possibility that the content of the testimony of the prosecution's witnesses was affected by the defendant's immunized testimony"). Merely "hypothesizing" a chain of taint from the defendant's immunized testimony to his prosecution is insufficient to warrant a hearing under *Kastigar*. *Id.* at 80.

This is so because the purpose of a *Kastigar* hearing is to test whether the government's case has been "tainted" by exposure to the defendant's compelled testimony—for example, where a government witness has read the defendant's testimony, *see, e.g., Allen*, 864 F.3d at 79, or where the testimony has made its way into the public domain, *see, e.g., United States v. Slough*, 641 F.3d 544, 548-49 (D.C. Cir. 2011). Where such exposure has occurred, the hearing tests whether the government's witnesses can nevertheless "separate the wheat of [their] unspoiled memory from the chaff of [the] immunized testimony." *Slough*, 641 F.3d at 550 (quoting *United States v. North*, 910 F.2d 843, 862 (D.C. Cir. 1990)); *see also Allen*, 864 F.3d at 97. But, where no government's witnesses nor any member of the prosecution team has been exposed to the compelled testimony, there plainly is no possibility of any taint. *See Slough*, 641 F.3d at 550 ("proof that a witness was never exposed to immunized testimony . . . would obviously satisfy the requirement" that evidence be derived from legitimate independent sources) (internal quotation omitted). Thus, absent any colorable argument that some member of the prosecution team or one or more of its witnesses were exposed to Black's FCA testimony, Defendants' request for a *Kastigar* hearing amounts to

9

nothing more than an improper request for a pre-trial discovery hearing about the government's criminal case.

Not a single member of the prosecution team and no cooperating witness has read or otherwise been exposed to the substance of Black's compelled testimony. Where there has been no exposure, there cannot be any evidentiary effect stemming from Black's compelled testimony. A hearing is therefore unnecessary. If needed, the government can furnish affidavits from the prosecution team and cooperating witnesses affirming that none of them have been exposed to Black's FCA testimony. *See, e.g., United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995) (government can meet its burden of showing independent sources through affidavits) (citing *United States v. Montoya*, 45 F.3d 1286, 1298 (9th Cir. 1995)).

Contrary to Defendants' assertions, *Allen* does not require a hearing in this case. Indeed, by its own terms, *Allen* addresses only a situation where "the government makes use of a witness who had *substantial exposure* to a defendant's compelled testimony," and requires a *Kastigar* hearing so as to ensure that "the witness's review of the compelled testimony did not shape, alter, or affect the evidence used by the government." 864 F.3d at 68-69 (emphasis added); *see also id.* at 69 ("denial of taint from a witness who has materially altered his or her testimony after being *substantially exposed* to a defendant's compelled testimony is insufficient . . .") (emphasis added). Here, there was no exposure at all, much less "substantial" exposure, to Black's compelled testimony. *Allen* does not require the district court to conduct a hearing here because no witness or prosecution team member has been exposed to compelled testimony.

**B. There can be no taint where the prosecution team was in possession of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *before* the testimony was compelled ▓▓▓**

Not only was there no exposure of Black's compelled testimony to the government or

10

any of its witnesses, there is another fundamental reason that *Kastigar* is not implicated here: the government was in possession of ▮▮▮▮ Black's testimony *before* he was ever compelled to testify by the FCA. The Second Circuit has recognized that where "the government was in possession of independent leads or evidence prior to the giving of the immunized testimony," that constitutes "the strongest proof" that the government's evidence is derived from legitimate sources and that there is thus no *Kastigar* violation. *United States v. Nanni*, 59 F.3d 1425, 1432 (2d Cir. 1995). And where the government provides documentary evidence establishing that it was in possession of the information before the defendant was compelled to testify, there is no need for a *Kastigar* hearing. *United States v. Provenzano*, 620 F.2d 985, 1006 (3d Cir. 1980) (*Kastigar* hearing not required where "the Government's documentary evidence revealed that as of a prior date it already had all the information [the defendant] later disclosed in [immunized testimony]"); *see also United States v. Lipkis*, 770 F.2d 1447, 1451 (9th Cir. 1985) (*Kastigar* hearing unnecessary where the defendant stipulated that there were only minimal differences between his non-immunized testimony and immunized testimony).

The "strongest proof" of no *Kastigar* violation is present here: The DOJ prosecution team interviewed Black two days *before* his testimony was compelled by the FCA, memorializing his answers in an FBI 302 report ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



In addition to the fact that the government already possessed





In sum, not only did the government already possess ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. As such, the Court should deny Defendants' motion for a *Kastigar* hearing.

### C. Black's speculation that the government's case may be tainted through some hypothetical, attenuated chain does not merit a *Kastigar* hearing.

Perhaps recognizing that the facts of this case are fundamentally different than those in *Allen*, where the government's main cooperating witness was substantially exposed to the compelled testimony, Defendants may resort to arguing that an attenuated chain of events somehow led to the government's case here becoming tainted. For example, Defendants appear to argue in their motion that the FCA attorney who interviewed Gavin Black may have exposed the prosecution team to the compelled testimony simply because the DOJ and FCA have "coordinated" efforts and attended some interviews together, and in particular the interview of James King. Motion at 17. These speculative assertions are baseless, and do not warrant the time and expense of a full-blown *Kastigar* hearing. Rather, the government can address any concerns regarding such attenuated "chains of taint" through sworn affidavits.

For example, the FCA lawyer who sat in during James King's proffer asked only a small handful of clarifying questions, and did not discuss Black's compelled testimony with King. Nor did he reveal the substance of Black's compelled testimony to any member of the DOJ prosecution team. This should not come as any surprise, given that the FCA was well aware of

the *Kastigar* issue and took care not to taint the DOJ-led investigation—indeed, that was the very point of establishing a day-one/day-two interview structure, in which the DOJ prosecution team interviewed witnesses at least one day *before* the FCA took their compelled testimony.

Moreover, both the FCA and SFO treat compelled testimony as strictly confidential—its disclosure outside of limited authorized circumstances is a crime under U.K. law. As the attached letter from the SFO attests (attached as Exhibit D), Black's compelled testimony was disclosed to certain LIBOR defendants in connection with the SFO's statutory disclosure obligations, but those defendants were under the obligation to maintain the confidentiality of the disclosure, under penalty of criminal prosecution. The SFO also states that it "can confirm that it did not rely upon the content of Gavin Black's compelled interview transcript in any public charging documents or in any press release and, to the best of our knowledge, the content of Gavin Black's compelled interview transcript was not referred to in any proceedings in open court in any case being prosecuted by the SFO." The FCA has provided a similar letter (attached as Exhibit C) in which it confirms that it did not share Black's compelled testimony with any Deutsche Bank individual (apart from Black himself), with any interviewees during their compelled testimony, or with anyone from the DOJ prosecution team. Nor did the FCA use Black's compelled testimony in its publicly-issued Final Notice. *Id.*

Unless the defense can offer some non-speculative factual basis to believe that someone on the prosecution team or a witness was actually exposed to Gavin Black's compelled testimony—whether directly or indirectly—a *Kastigar* hearing is not merited. *See, e.g., United States v. Bagdis*, 488 F. App'x 593, 597 (3d Cir. 2012) (*Kastigar* hearing not required where the government establishes it was not exposed to the compelled testimony and the defense "presents no evidence which calls this into question or raises a factual dispute that would normally warrant

14

a hearing"). It is not clear to the government what purpose would be served by expending the parties' and the Court's scarce time and resources on a full-blown evidentiary hearing, in which the witnesses (many of whom are located overseas) will simply testify that they had no exposure to Black's testimony. For these reasons, the Court should deny Defendants' motion for a *Kastigar* hearing.

                                                               Respectfully submitted,

                                                               Sandra Moser
                                                               Acting Chief, Fraud Section

By:    /s/ D. Brittain Shaw
        Deborah Brittain Shaw
        Trial Attorney
        /s/ Christopher Jackson
        Christopher Jackson
        Trial Attorney
        U.S. Department of Justice
        Criminal Division
        1400 New York Ave., N.W.
        (202) 616-2162 Phone
        (202) 514-0152 Fax

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this opposition was filed and served electronically via the ECF system on counsel for the defendants on August 30, 2017.

/s/ D. Brittain Shaw
D. Brittain Shaw
Trial Attorney
