**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

MATTHEW CONNOLLY and
GAVIN CAMPBELL BLACK,

        *Defendants*.

No. 1:16-cr-00370 (CM)

ECF Case

**ORAL ARGUMENT REQUESTED**


# MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANTS' JOINT MOTION FOR A *KASTIGAR* HEARING


**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090

*Attorneys for Defendant Matthew Connolly*

**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425

*Attorneys for Defendant Gavin Campbell Black*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 10

ARGUMENT .......................................................................................................................... 10

I.     THE GOVERNMENT HAS NO BASIS TO ARGUE THAT THE COURT
ERRED WHEN IT DETERMINED THE NEED FOR A *KASTIGAR*
HEARING .................................................................................................... 10

       A.     The Government's Unsupported Statements Do Not Establish that Mr.
Black's Compelled Testimony Did Not Taint the Government's Case .... 11

       B.     The Government's Brief Reinforces the Need for a *Kastigar* Hearing .... 13

       C.     The Government's Failure to Properly Redact its Brief and Supporting
Documents Further Supports the Need for a Hearing ............................... 21

II.    THE COURT SHOULD DISMISS THE INDICTMENT BASED ON THE
CURRENT RECORD .................................................................................. 22

III.   THE GOVERNMENT'S BRIEF DEMONSTRATES THE NEED TO
INSPECT THE GRAND JURY MINUTES ................................................ 23

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Henry v. Poole,*
    409 F.3d 48 (2d Cir. 2005) ....................................................................... 20

*Kastigar v. United States,*
    406 U.S. 441 (1972) ........................................................................... *passim*

*United States v. Allen,*
    864 F.3d 63 (2d Cir. 2017) ................................................................. *passim*

*United States v. Blumhagen,*
    No. 09-CR-79S, 2017 WL 1243038 (W.D.N.Y. Apr. 5, 2017)............................. 17

*United States v. Hoey,*
    No. S3 11-cr-337 (PKC), 2014 WL 2998523 (S.D.N.Y. July 2, 2014)................... 23

*United States v. Hubbell,*
    530 U.S. 27 (2000)........................................................................................ 23

*United States v. Kristel,*
    762 F. Supp. 1100 (S.D.N.Y. 1991) ............................................................... 12

*United States v. Nanni,*
    59 F.3d 1425 (2d Cir. 1995) .............................................................. *passim*

*United States v. Nemes,*
    555 F.2d 51 (2d Cir. 1977) .................................................................. 11, 17, 22

*United States v. Parness,*
    503 F.2d 430 (2d Cir. 1974) ......................................................................... 20

*United States v. Schwimmer,*
    882 F.2d 22 (2d Cir. 1989) ........................................................................... 14

*United States v. Sells Eng'g Inc.,*
    463 U.S. 418 (1983)...................................................................................... 23

*United States v. Taylor,*
    767 F. Supp. 2d 428 (S.D.N.Y. 2010) ............................................................ 20

**Rules**

Federal Rule of Criminal Procedure 6 ................................................................. 23

ii

Defendants Matthew Connolly and Gavin Campbell Black ("Defendants") respectfully submit this memorandum of law in further support of their motion for a hearing pursuant to *Kastigar v. United States*, 406 U.S. 441 (1972) ("*Kastigar*").

## PRELIMINARY STATEMENT

The Government does not provide the Court with any basis to reverse its prior grant of a *Kastigar* hearing.  Rather, the Government's opposition only repeats the argument that this Court previously rejected:  that a *Kastigar* hearing is unnecessary because "[n]ot a single member of the prosecution team and no cooperating witness has read or otherwise been exposed to the substance of Black's compelled testimony."  [ECF No. 131 (United States' Opp'n to Defs' Mot. for a *Kastigar* Hearing ("Gov't Br.")) at 10.]  In doing so, the Government fails to substantiate its position with any sworn statements.  The Government's limited submission in fact underscores the need for a hearing because it appears the Government, in its grand jury presentation, relied on statements from at least two key cooperators likely tainted by Mr. Black's compelled testimony.  The Government also plans to call these same cooperators as witnesses at trial.  In addition, based on the unsworn letters attached to the Government's brief, it appears that the multiple agencies that assisted the Government's investigation, as well as dozens of other individuals, had access to Mr. Black's compelled testimony.  The Government fails to provide a full accounting of the uses these entities and individuals made of Mr. Black's compelled testimony; nor does it provide a list of any additional individuals with whom they shared or discussed Mr. Black's compelled testimony.  The Government has therefore failed to demonstrate the absence of taint.

Given there is no dispute that Mr. Black provided compelled testimony to the U.K. Financial Conduct Authority ("FCA") ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆,[1] the Government bears the burden of affirmatively demonstrating that the evidence used in its grand jury presentation and that it plans to present at trial was derived from legitimate sources wholly independent of the compelled testimony. Not only has the Government failed to meet this burden because it has not submitted any affidavits from the relevant witnesses, but the limited record available demonstrates the likelihood that Mr. Black's compelled testimony infected the Government's investigation. Among other things, the Government inexplicably conducted its initial interview of a key cooperator jointly ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆

Moreover, while the Government acknowledges the need for a "wall" to prevent agencies and individuals exposed to Mr. Black's compelled testimony from interacting with the Government and its witnesses concerning the substance of this case, such interactions nevertheless occurred. In addition to the joint interview of one of the key cooperators, the Government conducted multiple other joint interviews with the FCA. The Government also received investigative assistance from other entities with access to Mr. Black's compelled

---

[1] While Defendants have redacted certain portions of their submission pursuant to the Court's entry of the sealing order [*see* ECF No. 128], and have done so in a manner consistent with the fact that the Government filed the attachments to its opposition under seal, Defendants reserve their right to challenge the necessity of such redactions.

testimony or that worked directly with the FCA, including, but not limited to, the U.K.'s Serious Fraud Office ("SFO") and the Commodities Futures Trading Commission ("CFTC"). ██████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████  Each of these individuals is a potential witness in this case.  The Government, however, fails to provide an accounting of the numerous interactions between and among it and the governmental agencies, witnesses and lawyers who had access to Mr. Black's compelled testimony or its substance.  In addition, the Government filter team compounded the possibility of taint by failing to redact its brief properly.  Because of this error, portions of Mr. Black's compelled testimony were available for the public to view and download for more than twelve hours.

Accordingly, should the Court accept the Government's invitation to rule on the current record, the Court should grant Defendants' Motion and dismiss the Indictment against Mr. Black because the record establishes that Mr. Black's compelled testimony contaminated the Government's investigation.  If, however, the Court upholds its prior determination that a *Kastigar* hearing is necessary, Defendants should be allowed to inspect the grand jury minutes prior to that hearing to assess whether the Government used Mr. Black's compelled testimony to obtain the Indictment.

## BACKGROUND

### A.    The FCA Obtains Mr. Black's Compelled Testimony

The FCA interviewed Mr. Black, a U.K. citizen, on October 3, 2013. ████████████████

████████████████████████████████████████████████

3

[REDACTED]

Mr. Black's interview was conducted pursuant to Section 171 of the United Kingdom's Financial Services and Markets Act of 2000, which "permits the FCA to compel a person to answer questions in an on-the-record interview." (Gov't Br. at 5 (internal quotation marks omitted).) Mr. Black's refusal to answer questions pursuant to Section 171 could have resulted in his imprisonment. [REDACTED]; *see also United States v. Allen*, 864 F.3d 63, 76 (2d Cir. 2017) ("*Allen*"). As a result, the FCA interview of Mr. Black was compulsory [REDACTED]

[REDACTED]

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

**C.     The Government's Failure to Prevent Mr. Black's Compelled FCA Testimony from Tainting Its Investigation**

While recognizing that the maintenance of a "wall" was necessary to prevent the Government and its witnesses from exposure to Mr. Black's compelled testimony, the limited record available establishes that prosecutors, agents and witnesses were exposed to Mr. Black's compelled testimony in multiple ways. ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████. In addition, at least one of the Government's key cooperating witnesses admitted to ████████████

████████████████████████████████

(1)    *The Government and the FCA Jointly Investigated this Case*

The available record illustrates the highly coordinated nature of the investigations conducted by the Government and the FCA. For example, the FCA had a pattern of attending Government proffers conducted in connection with the LIBOR investigation. These include, at the very least, the Government's proffer of Mr. Connolly on May 3, 2013 (*see* Levine Decl. Ex. B (Aug. 12, 2013 FBI 302 Mem. of Matthew Connolly Interview on May 3, 2013 ("Connolly 302") at 1)), and, based on FBI 302 interview memoranda produced by the Government, 10 proffers of non-Deutsche Bank employees between August 2011 and November 2013, which were of individuals associated with the following financial institutions, each of which is an alleged counterparty here: Barclays (2); Citibank (1); UBS (6); and JP Morgan (1).

The Government and the FCA also jointly interviewed one of the Government's cooperating witnesses, James King, on July 31, 2014—approximately 10 months after the FCA took Mr. Black's compelled testimony. (*See* Levine Decl. Ex. C (Sept. 23, 2014 FBI 302 Mem. of James King Interview on July 31, 2014 ("King 302")) at 1.) ████████████████████ ████████████████████████████████████████████ ████████████    ███████████████████████████████ The Government acknowledges that Mr. Prange asked what it characterizes as "only a small handful of clarifying questions" at Mr. King's interview, but provides no detail as to the substance of the questions. (Gov't Br. at 13.) The Government also fails to provide any detail concerning the substance of any discussions that the Government had with the FCA both before and after this interview.



The Government first interviewed Mr. Curtler, Mr. Black's former supervisor, on September 30, 2015—approximately two years after the FCA obtained Mr. Black's compelled testimony ████████████████████████████████████ (*See* Levine Decl. Ex. D (Oct. 2, 2015 FBI 302 Mem. of Michael Curtler Interview on Sept. 30, 2015 ("Curtler 302 #1")) at 1.)  The Government's notes of this interview reflect its awareness that Mr. Curtler likely obtained information directly or indirectly from FCA-compelled testimony. Specifically, the Government advised Mr. Curtler at the outset "to not share with DOJ any information that he learned either directly from the UK's Financial Conduct Authority (FCA) or through open source reporting of FCA statements."  (*See id.*)

Notwithstanding this disclosure, the Government does not describe any steps taken to determine the extent to which Mr. Curtler's

7

testimony was tainted by his review of these materials, nor any steps the Government took to prevent that taint from further infecting its investigation.

In addition, at least one other Deutsche Bank employee that the Government interviewed prior to Mr. Black's compelled testimony admitted to receiving information from the FCA. On August 28, 2013, the Government interviewed former Deutsche Bank employee Olesya Skofenko. (*See* Levine Decl. Ex. F (Feb. 12, 2014 FBI 302 Mem. of Olesya Skofenko Interview on Aug. 28, 2013 ("Skofenko 302")).) Per the Government's interview summary, Ms. Skofenko: (i) was shown documents by the FCA that the Government was apparently able to identify; and (ii) informed the Government that conclusions she drew about whether "it was wrong to collude with another bank in order to affect the market," were based on a document in the materials she was shown by the FCA. (*See* Levine Decl. Ex. F (Skofenko 302) at 5 & 9 (referring to "FCA bundle").) In fact, Ms. Skofenko made an inculpatory statement concerning one of Mr. Black's co-workers, Christian Bittar. (*Id.* ("[T]he only indications that she had that BITTAR also knew [collusion] was wrong were: 1) a chat that she was shown by the [FCA] . . . .").) ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

**D.    The Government's Admissions Suggest that Tainted Information Was Presented to the Grand Jury**

While the Government provides very little detail concerning the information presented to the grand jury, the information that it does provide suggests that the grand jury was asked to return Indictments based, at least in part, on evidence derived from Mr. Black's compelled FCA testimony. The Government asserts that the "principle [*sic*] witness before the grand jury was FBI Special Agent Jeffrey Weeks." (Gov't Br. at 4.) Although the Government states that

Special Agent Weeks "was not exposed to Black's FCA testimony," it asserts that his testimony was "based entirely on the substantial documentary evidence amassed by the DOJ and *his interview of witnesses*, such as other traders at Deutsche Bank who had knowledge of, or participated in, the conspiracy to manipulate LIBOR." (Gov't Br. at 4 (emphasis added).)  The Government, however, fails to specify the "witnesses" on whom Special Agent Weeks relied. These witnesses presumably include the tainted alleged co-conspirators identified in the Indictment, which includes Messrs. King and Curtler.  In fact, Special Agent Weeks authored the memoranda of Mr. Curtler's interviews referenced above.  (*See* Levine Decl. Exs. D & E.)

### E.    The Government Belatedly Creates a Filter Team

During conversations with Mr. Black's counsel prior to the Government's filing of its *Kastigar* brief, the Government's filter team acknowledged that it was only created recently after the Second Circuit's decision in *Allen*.  In other words, despite its awareness of the *Kastigar* issue, the Government had no filter team in place to screen its interactions with the FCA, SFO and all other individuals exposed to Mr. Black's compelled testimony at any point in time prior to the return of the Indictment in this case.

### F.    This Court's Determination that a *Kastigar* Hearing Is Necessary

At the July 25, 2017 status conference, the Court recognized that not holding a *Kastigar* hearing based solely on the Government recitation of events would run counter to the Second Circuit's recent decision in *Allen*.  The Court asserted: "It's clear that I'm going to have to have a *Kastigar* hearing.  That seems to have been Judge Rakoff's fatal mistake.  I certainly can't just accept the government's representations that there isn't a *Kastigar* problem here." (July 25, 2017 Tr. at 33:20-23.)  In response, the Government argued that it was "not of the opinion that a *Kastigar* hearing is even necessary" (*id.* at 35:23-24), because "Mr. Black's testimony did not

make it into the hands of any of our cooperators; it did not make it into the hands of any of the government's prosecution team, agents[]" (*id.* at 35:3-5).  The Court was unswayed, stating, "I'm having [a *Kastigar* hearing].  I'm not going to make the same mistake."  (*Id.* at 35:25-36:1.)  As the Court recognized, comprehensive vetting is needed to determine whether Mr. Black's compelled testimony—in total or in substance—has tainted the Government's case.

## LEGAL STANDARD

*Kastigar* imposes a burden shifting framework. 

, the government has the "heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461-62; *see also Allen*, 864 F.3d at 91.  *Kastigar* is intended to provide defendants with "a comprehensive safeguard" and "very substantial protection." *Allen*, 864 F.3d at 91.

, the Government bears the "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar*, 406 U.S. at 460.  It has failed to do so.

## ARGUMENT

I.    **THE GOVERNMENT HAS NO BASIS TO ARGUE THAT THE COURT ERRED WHEN IT DETERMINED THE NEED FOR A *KASTIGAR* HEARING**

The Court should reject the Government's assertion that a *Kastigar* hearing is unnecessary because (i) the Government's opposition fails to establish that Mr. Black's compelled testimony did not taint the Government's case; (ii) the Government's opposition bolsters the need for a *Kastigar* hearing; and (iii) the Government filter team's recent failure to

properly redact its submission exposed the public, including witnesses and the trial team, to the compelled testimony.

### A. The Government's Unsupported Statements Do Not Establish that Mr. Black's Compelled Testimony Did Not Taint the Government's Case

The Government's unsupported assertions are insufficient to demonstrate the Court erred in ordering a *Kastigar* hearing. The "mere 'assertion that the immunized testimony was not used' is not sufficient." *United States v. Nanni*, 59 F.3d 1425, 1432 (2d Cir. 1995) (quoting *United States v. Nemes*, 555 F.2d 51, 55 (2d Cir. 1977)). The Government's unsupported assertions therefore do not satisfy its "'affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.'" *Allen*, 864 F.3d at 91 (quoting *Kastigar*, 406 U.S. at 460); *Nanni*, 59 F.3d at 1432.

The Court should also reject the Government's argument that "[t]here can be no taint" here because "the government was in possession of the substance of Black's testimony *before* he was ever compelled to testify by the FCA." (Gov't Br. at 10-11 (emphasis in original).) This argument is premised on the Government's use of the same "day one/day two" procedure—in which the Government proffered a witness before the FCA compelled that witness's testimony— that the *Allen* court found to be insufficient to prevent a *Kastigar* violation. *See Allen*, 864 F.3d at 76. This procedure was ineffective to eliminate taint because the Government did not obtain the statements or testimony from its *witnesses* prior to the time that the FCA obtained compelled testimony. *See id.* at 77-78. Similarly, in this case, the Government did not interview the two primary cooperators in this case—Mr. King and Mr. Curtler—until *after* the FCA obtained Mr. Black's compelled testimony on October 1, 2013. *See supra* at 6 (July 31, 2014 and September 30, 2015, respectively). In fact, the limited record available demonstrates that the Government

11

made improper use of Mr. Black's compelled testimony during its witness interviews in multiple ways.[2]

First, the Government allowed Mr. Black's compelled testimony to be improperly used "'to search out other testimony to be used in evidence against him.'" *Nanni*, 59 F.3d at 1431 (quoting *Kastigar*, 406 U.S. at 454). This occurred, at the very least, during Mr. King's first interview with the Government, in which Mr. Prange— ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ participated and was permitted to question Mr. King concerning topics discussed during Mr. Black's testimony. (Gov't Br. at 13.)

Second, it appears that exposure to information derived from Mr. Black's compelled testimony improperly was used by at least some of witnesses—including Mr. Curtler—to "shape, alter, or affect the information that [they] provided and that the Government used." *Allen*, 864 F.3d at 93; *see also United States v. Kristel*, 762 F. Supp. 1100, 1108 (S.D.N.Y. 1991) (finding "use of immunized testimony is clearly prohibited by *Kastigar* and its progeny" when "the Government used [the defendant's] immunized testimony in questioning witnesses who later testified before the grand jury and as a lead to discover other evidence"). ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] The Government also fails to address the fact that Mr. Black's FCA-compelled testimony was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

██████████████████████   Notably, the Government makes no representations as to whether any of its other cooperators and witnesses were exposed to these same materials.

Accordingly, the fact that the Government proffered Mr. Black before the FCA obtained his compelled testimony does not eliminate the possibility that its case was tainted by Mr. Black's compelled testimony.

**B.     The Government's Brief Reinforces the Need for a *Kastigar* Hearing**

Far from demonstrating that a hearing is unnecessary, the Government's brief and supporting materials broadens the specter of *Kastigar* taint. While acknowledging the obligation to create a "wall" to prevent the prosecutors and witnesses from being exposed, directly or indirectly, to Mr. Black's compelled testimony, these materials reflect that the measures the Government put in place were inadequate and that the taint of Mr. Black's compelled testimony permeated the Government's entire case. Moreover, the Government's repeated assertions that

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

(1)     *The "Wall" and Other Protections Allegedly Maintained
         by the Government Were Inadequate*

The Government's own description of the "wall" it was required to impose under *Kastigar* illustrates the likelihood of taint. As the Government acknowledges, *Kastigar* required the Government to set up a "wall" preventing the prosecutors, agents and witnesses involved in this prosecution of Mr. Black from interacting with the FCA investigators and other individuals exposed to Mr. Black's compelled testimony. (Gov't Br. at 6 (asserting that DOJ set up a "wall" in order "to protect the independence and integrity of its investigation")); *see also Allen*, 864

13

F.3d at 76; *United States v. Schwimmer*, 882 F.2d 22, 26 (2d Cir. 1989) (internal citations omitted). Even the current, limited record establishes that either no such wall was in place or that the Government took inadequate steps to ensure that Mr. Black's testimony did not taint the prosecutors, agents and witnesses involved in this case.

The Government's opposition fails to clarify the scope of the interactions between the FCA and the Government. For example, the Government inexplicably allowed FCA investigator Michael Prange to attend the first proffer of Mr. King, approximately ten months after the compelled examination of Mr. Black. (*See* Levine Decl. Ex. C (King 302) at 1.) What is more, the Government acknowledges—for the first time in its opposition—that Mr. Prange was permitted to question Mr. King, but provides no detail as to what questions he asked. (Gov't Br. at 13.) Significantly, the Government's interview memorandum does not indicate that Mr. Prange asked any questions of Mr. King (*see generally* Levine Decl. Ex. C (King 302)), and it is troubling that Defendants learned of this fact only after the *Kastigar* issues emerged. In addition, the Government provides no detail concerning the prosecutors' conversations with Mr. Prange both before and after the King interview apart from an unsupported summary assertion that Mr. Prange did not "reveal the substance of Black's compelled testimony to any member of the DOJ prosecution team." (Gov't Br. at 13.) If the Government had maintained an effective "wall" as it claims, then none of these interactions should have occurred.

The Government also fails to provide an accounting of the numerous interactions between and among it and the governmental agencies, witnesses and lawyers who had access to Mr. Black's testimony or the substance thereof. The evidence reveals that there was broad cooperation between and among the Government and other agencies with access to Mr. Black's compelled testimony. [*See, e.g.*, ECF No. 117 (Defs. Mem. in Sup. of Mot. to Compel ("Defs.

MTC")) at 18 (describing scope of Prosecution Team).]  For example, in the press release announcing the indictment of Defendants, the Government stated that it received investigative "assistance" from three entities ███████████████████████████████████████ ██████████████████  Specifically, the press release stated:

> The investigation leading to this case has required, and has greatly benefited from, a diligent and wide-ranging assistance among various enforcement agencies both in the United States and abroad.  In particular, the [Government] acknowledges and expresses its appreciation for this assistance from the Commodity Futures Trading Commission's Division of Enforcement, the U.K. Financial Conduct Authority and the U.K. Serious Fraud Office.

(Levine Decl. Ex. G (June 2, 2016 Dep't of Justice Press Release) at 2.)  Such "assistance" is exemplified by FCA officials attending at least eleven Government proffers, in addition to King's, in connection with the LIBOR investigation, including Mr. Connolly's proffer on May 3, 2013.  (*See* Levine Decl. Ex. B (Connolly 302).)  This collaboration is also shown by the SFO's and Government's joint decision as to which entity would file charges against Mr. Black.  (*See, e.g.*, Defs. MTC at 21.)  Given the Government's admitted interactions concerning the substance of this case with the FCA, who conducted the compelled testimony, and ████████████████ █████████████████████████████████████████, the Government's supposed "wall" was illusory.

The Government similarly fails to address that the CFTC—the other entity referenced in the press release—operated on both sides of the "wall."  In its opposition, the Government notes that the CFTC attended Mr. Black's proffer on October 1, 2013, placing the CFTC squarely on the Government's side of the "wall."  (*See* Gov't Br. at 4-5.)  Yet, the declaration submitted to the District Court in *Allen* by the Deputy Chief of the Fraud Section of the Criminal Division noted that the FCA and CFTC worked together in investigating LIBOR-related conduct, and "the CFTC had attended [compelled] interviews" conducted by the FCA.  (Levine Decl. Ex. H (Decl.

15

of Daniel A. Braun) ¶ 6.)  This declaration noted that "when [the Government] asked the CFTC to refrain from attending or participating in additional compelled interviews that the FCA conducted, the CFTC agreed to remain on [the Government's] side of the 'wall.'"  (*Id.* ¶ 7.)  But the Government has made no representations concerning what measures it put in place in this case, if any, to prevent the CFTC from transferring information that it learned from the FCA to the Government.  The Government's failure to address this issue is especially noteworthy given that the CFTC was present at Mr. King's July 2014 proffer (*see* Levine Decl. Ex. C (King 302) at 1), and because Defendants put the Government on notice of the potential *Kastigar* problems concerning the CFTC at the recent status conference (*see* July 25, 2017 Tr. at 40:17-19; 41:9-11; 46:9-10; 46:17-25 (Mr. Black's counsel noting the CFTC's presence on both sides of the supposed wall)).

Moreover, the Government did not have a filter team in place to screen its interactions with the ▆▆▆▆▆▆▆▆▆ or any other agency, entity or individual with access to Mr. Black's compelled testimony prior to indicting him.  Additionally, many of the same members of the Government's prosecution team here were also members of the Government's prosecution team in the *Allen* case.  *See, e.g., Allen*, 864 F.3d at 66 (listing Government's prosecution team).  The Government does not address the implications of that overlap here, and fails entirely to address what, if any, efforts were taken internally to prevent the exchange of information in its own internal interactions—notwithstanding its contention that *Allen* is an entirely different case.

(2) ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

16



<hr />

<sup>3</sup> *See, e.g.*, *United States v. Blumhagen*, 09-CR-79S, 2017 WL 1243038, at *2 (W.D.N.Y. Apr. 5, 2017) ("The government must meet [its *Kastigar*] burden by a preponderance of the evidence and cannot meet it by simply asserting that immunized testimony or information was not used, for example, by submission of a conclusory affidavit." (citing *Nanni*, 59 F.3d at 1431-32; *Nemes*, 555 F.2d at 55)).







Mr. Black has steadfastly maintained that he committed no crime and is innocent of the charges brought against him.



### C.    The Government's Failure to Properly Redact its Brief and Supporting Documents Further Supports the Need for a Hearing

The Government filter team's failure to redact properly its brief and exhibits further supports the need for a hearing.  Prior to filing these materials, the Government moved to file certain materials under seal, including the portions of its *Kastigar* brief that discuss the substance of Mr. Black's compelled testimony and the compelled testimony itself.  [ECF No. 124.]  The Government argued that sealing was necessary to protect, *inter alia*, the trial team and witnesses from taint.  [*Id.*]  The Court granted the Government's application.  [ECF No. 128.]

The Government, however, failed to redact properly these materials, rendering portions of Mr. Black's compelled testimony available for the public to view for more than twelve hours.  (*See* Levine Decl. Ex. I (Aug. 31, 2017 Law360 article).)  It is believed that the Government was alerted to the redaction error by the press, who published several articles regarding the Government's improperly-redacted filing.  (*See, e.g., id.*)  During this time, any potential witness could have read Mr. Black's compelled statements, tainting their testimony; a copy of the improperly-redacted filing could have also been saved and further disseminated.  Similarly, the Government has made no representation as to whether any members of the prosecution team received electronic copies of the improperly redacted brief and supporting documentation before the Government learned of its mistake.  A hearing is clearly necessary to determine, at the very

least, how far the taint spread and what additional efforts the Government undertook, if any, to prevent its blunder from further prejudicing the case against Mr. Black.

## II.     THE COURT SHOULD DISMISS THE INDICTMENT BASED ON THE CURRENT RECORD

To the extent the Court accepts the Government's request to rule on the current record, the Court should grant Defendants' motion and dismiss the Indictment against Mr. Black because the Government has not carried its heavy burden under *Kastigar*.   While offering to submit affidavits, the Government has not done so.   Rather, the Government attempts to discharge its heavy burden by simply asserting that "[n]ot a single witness nor any member of the prosecution team has been exposed to Defendant Black's compelled testimony."   (Gov't Br. at 8.)   Such a bald assertion, especially on this record, is insufficient.   Indeed, a "prosecutor may never have seen the witness's testimony and may believe in good faith that no one associated with the federal prosecution has seen it, but such a disclaimer does not preclude the possibility that someone who has seen the compelled testimony was thereby led to evidence that was furnished to federal investigators."   *Nemes*, 555 F.2d at 55.   "Plainly the prosecution's assertion that the immunized testimony was not used is inadequate."   *Id.*; *see also Nanni*, 59 F.3d at 1432 ("Neither a mere 'assertion that the immunized testimony was not used' nor even proof that the prosecutor 'had no direct or indirect access to the grand jury minutes' is sufficient.") (quoting *Nemes,* 555 F.2d at 55).

The Court should reject the Government's attempt to shift the burden to Defendants to make the "argument that some member of the prosecution team or one or more of its witnesses were exposed to Black's [compelled] testimony."   (Gov't Br. at 9; *see also id.* at 14 ("Unless the defense can offer some non-speculative factual basis to believe that someone on the prosecution team or a witness was actually exposed to Gavin Black's compelled testimony—whether directly

or indirectly—a *Kastigar* hearing is not merited.").) Such burden shifting is inappropriate, as it would "repudiate the basis for *Kastigar*." *Allen*, 864 F.3d at 92 (quoting *United States v. Hubbell*, 530 U.S. 27, 45-46 (2000) (internal alterations omitted)). The Government's opposition, unsupported by any sworn statements, falls short of carrying its substantial burden. If the Court is to rule based on this record alone, the Indictment should be dismissed.

## III.   THE GOVERNMENT'S BRIEF DEMONSTRATES THE NEED TO INSPECT THE GRAND JURY MINUTES

Finally, if the Court maintains its prior determination that a *Kastigar* hearing is necessary, Defendants should be allowed to inspect the grand jury minutes prior to that hearing. Upon a "strong showing of particularized need," *United States v. Sells Eng'g Inc.*, 463 U.S. 418, 443 (1983), the Court may authorize disclosure of grand jury minutes "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Fed. R. Crim. P. 6(e)(3)(E)(ii); *see also United States v. Hoey*, No. S3 11–cr–337, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014).

Here, the "particularized need" is clear: Defendants need to determine whether the Government obtained the Indictment against Mr. Black using his compelled testimony. In its opposition, the Government notes that FBI Special Agent Jeffrey Weeks was the "principle [*sic*] witness before the grand jury," and neither he nor the witnesses he interviewed to prepare for his testimony "were ever exposed to Black's compelled testimony or its substance." (Gov't Br. at 4.)[4] However, it must be determined whether witnesses besides Agent Weeks testified and, if so,

---

[4] Special Agent Weeks also served as a grand jury witness in *Allen*. The Government argued in *Allen* that there was no taint because Special Agent Weeks "had no exposure whatsoever to the defendants' [compelled] interviews or their substance in any manner." Government's Post-"*Kastigar*" Hearing Br., *United States v. Allen*, No. 14-cr-272 [ECF No. 208], at 10 (S.D.N.Y. Jan. 15, 2016). After reviewing the grand jury transcript, the Second Circuit rejected that

whether their testimony was affected by Mr. Black's compelled testimony. *See Allen*, 864 F.3d

at 100 ("[E]xploration of the question of taint can be made . . . by review of the prosecutor's

evidence and of the grand jury transcript." (internal quotation omitted) (alterations in original)).

Moreover, given the holes in the "wall" allegedly erected by the Government, the grand jury

minutes should be inspected to determine if the Government's representations are accurate.  If

the grand jury was exposed to evidence derived from Mr. Black's compelled testimony,

dismissal of the indictment is appropriate "'unless the government establishes that the grand jury

would have indicted even absent that testimony.'"  *Id.* at 100 (quoting *Nanni*, 59 F.3d at 1433).

The Court should allow for inspection of the grand jury minutes to hold the Government to this

burden.

---

argument, concluding that elements of the defendants' compelled testimony had been conveyed
to Agent Weeks indirectly, and he then provided that information to the grand jury in violation of
the defendants' Fifth Amendment rights. *See Allen*, 864 F.3d at 101.

24

## CONCLUSION

For these reasons, the Court should order a *Kastigar* hearing, or in the alternative, dismiss the Indictment against Mr. Black, and grant such further relief that it deems just and proper.

Dated: New York, New York
      September 25, 2017

                                      Respectfully Submitted:

By: S/ Kenneth M. Breen                    By: S/ Seth L. Levine
    (electronic signature with permission)           Seth L. Levine
    Kenneth M. Breen                          Miriam L. Alinikoff
    John P. Nowak                            Aaron I. Karp
    Phara A. Guberman
    Jane H. Yoon

**PAUL HASTINGS LLP**                      **LEVINE LEE LLP**
200 Park Avenue                            650 Fifth Avenue, 13th Floor
New York, New York 10166               New York, New York 10019
Telephone:  (212) 318-6000              Telephone:  (212) 223-4400
Facsimile:  (212) 319-4090               Facsimile:  (212) 223-4425
kennethbreen@paulhastings.com          slevine@levinelee.com
johnnowak@paulhastings.com            malinikoff@levinelee.com
pharaguberman@paulhastings.com       akarp@levinelee.com
janeyoon@paulhastings.com

*Attorneys for Defendant Matthew Connolly*    *Attorneys for Defendant Gavin Campbell Black*

25